IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No.14-00054-CG |
| | * | |
| JERI MICHELLE MARKS | * | |

**FACTUAL RESUME**

The abovecaptioned defendant admits the allegations of Counts 1 and 7 of the Indictment.

**ELEMENTS OF THE OFFENSE**

**Count One**: The defendant understands that in order to prove a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine, as charged in Count One of the Indictment, the United States must prove the following beyond a reasonable doubt:

First, that two or more individuals came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute methamphetamine; and second, that the defendant, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan; and third, that at least 50 grams of methamphetamine was involved in the conspiracy.

**Count Seven**: The defendant understands that in order to prove a violation of Title 18, United States Code, Section 924(c)(1), using, carrying, possessing a firearm in furtherance of and in relation to a drug trafficking felony, as charged in Count Seven of the Indictment, the United States must prove the following beyond a reasonable doubt:

(1) that the defendant committed the drug trafficking crime charged the indictment;

(2) that the defendant knowingly used, carried or possessed a firearm; and that

(3) the defendant used the firearm in relation to, carried the firearm in relation to, or

1

possessed the firearm in furtherance of the drug trafficking crime.

## OFFENSE CONDUCT

The defendant admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for his plea of guilty. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

### Facts

On February 11, 2014, members of the Mobile County Sheriff's Office recieved information from a cooperating defendant (CD) who has been charged with possession of controlled substance charge with the Baldwin County Sheriff's Office. CD provided information about some of the members of the conspiracy who were involved in the distribution of methamphetamine ice. On or about February 28, 2014, Deputy J.T. Sullivan received information that a white male subject known as Thomas Jason Strickland (aka J-Red), and other subjects at Strickland's residence on East Carlton Acres Drive where they were cooking methamphetamine. The anonymous source stated that Strickland and one of the others were in possession 30 boxes of pseudoephedrine and were actively engaged in the process of cooking methamphetamine.

On or about March 11, 2014 at approximately 0930 hours, Deputy Sullivan received a call from a reliable confidential informant (RCI) who advised that a white male subject known as Thomas Jason Strickland, aka "J-Red" was in possession of a large amount of methamphetamine ice. "J-Red" told the reliable confidential informant that he (J-Red) could sell the reliable confidential informant three ounces of methamphetamine ice for $4,000. The reliable confidential

2

informant told "J-Red" that he (the RCI) did not have that kind of money but that he (the RCI) would have to contact some people to see if they could come up with the money.

The RCI then contacted Deputy Sullivan. Deputy Sullivan then drove to the location of Strickland's residence on East Carlton Acres Drive.

At approximately 1200 hours, the reliable confidential informant then placed a call to Strickland, aka "J-Red" and told "J-Red" that the RCI had some people that wanted to try out an eight ball (3.5 grams) of the methamphetamine ice that "J-Red" had talked about earlier. Between 12:30 -12:40 hours, MCSO Deputy Bryan Hill observed a white male subject exit and leave the residence on East Carlton Acres Drive. Deputies Sullivan, Clinton Law, and Greg O'Shea then proceeded to follow the driver of the green older model Ford Mustang with the tan soft convertible top to the meeting with the RCI on Lott Road.

A short time later, the RCI contacted Deputy Sullivan and advised him that "J-Red" had brought a total of three (3) ounces of methamphetamine ice to the RCI but only left one (1) ounce. The RCI stated "J-Red" wanted to leave the entire amount with the RCI. The RCI advised "J-Red" that he did not want the entire amount at this time but would contact him as soon as the RCI could determine if his "people" wanted more. The RCI would then contact "J-Red" to get the other two (2) ounces of methamphetamine ice. "J-Red" (Thomas Jason Strickland) was kept under constant surveillance during the time that he left the residence until he met with the RCI. Deputy Sullivan retrieved the methamphetamine ice from the RCI that was left by "J-Red." The methamphetamine ice field tested positive for methamphetamine.

On the same day, March 11, 2014, at approximately 3:50 p.m., a state search warrant was obtained for "J-Red's" residence on East Carlton Acres Drive. Using the RCI, the deputies arranged for Strickland to deliver the other two ounces of methamphetamine ice. The Mobile

County Sheriff's Office Narcotics Unit conducted a take down on Strickland and seized the two ounces of methamphetamine ice. The methamphetamine ice field tested positive for methamphetamine. Strickland was read his Miranda rights and stated he understood his rights. Strickland gave Deputy Sullivan information concerning a subject named "Adrianne" who was receiving methamphetamine ice from the Montgomery area and selling in the Mobile area. He stated he purchased meth ice from her in the past and could still purchase ice from her. Strickland gave "Adrianne's" vehicle description and directions to her residence.

On March 12, 2014, Deputy Sullivan followed the directions given to him by Strickland to "Adrianne's" residence and obtained the tag number from the vehicle parked in the driveway. The Alabama tag was registered to Adrianne Davis Miller with a Montgomery address. Strickland further stated that Adrianne Miller was due to receive a shipment of methamphetamine ice from her supplier, also reportedly from the Montgomery area.

On March 13, 2014, it was discovered that Adrianne Miller and Malcolm David Thomas were in a hotel room at a hotel in Satsuma, Alabama. Deputies Alan OShea, Raylene Busby, and a Mobile County Sheriff's Office canine unit set up surveillance at this hotel. Due to erratic driving by Thomas when he left the hotel, the deputies suspected that he was attempting to determine whether he was being followed, so they decided to terminate the surveillance.

On March 14, 2014, at approximately 7:15 a.m., Deputy Sullivan verified with the hotel that Adrianne Miller was registered there. Subsequently, surveillance was initiated on the hotel. Thomas and another white male exited the hotel and entered Miller's vehicle, a red Honda. The red Honda came to a stop near the hotel office and the white male exited the red Honda. The white male was observed getting into a Budget rental truck parked on the opposite side of the LaQuinta Inn parking lot. Both vehicles exited the parking lot with the Budget rental truck

4

following the red Honda and both vehicles traveled to an address Old Highway 43, Creola, Alabama.

The driver of the Budget rental truck was later identified as A.M., a known meth cook, dealer and user. Both Thomas and A.M. drove to the residence on Old Highway 43, Creola, Alabama and arrived there at approximately 10:50 a.m. Both vehicles, driven by Thomas and A.M., then left the residence at approximately 10:52 a.m. As the vehicles left, Deputy John Cassidy observed a heavy set male subject walk out onto the front porch. The heavy set male was later identified as J.W. The red Honda Accord and the Budget Rental truck left the residence driving south on Highway 43. The red Honda Accord proceeded on Highway 43 and returned to the hotel in Satsuma.

Deputies John Cassidy, Bryan Hill, Greg O'Shea, Raylene Busby, and Mike Imel followed the Budget rental truck and observed the truck driving on the shoulder of Interstate 65 for long periods of time. The Budget rental truck exited onto the Springhill Avenue exit where a traffic stop was then initiated and the driver was identified as A.M. A short time later, Deputy Mike Imel obtained consent to search from A.M. Deputy Imel advised that he had retrieved a clear zippered baggie containing a substance believed to be methamphetamine ice. The methamphetamine ice field tested positive for methamphetamine.

Deputy Busby approached A.M. and read A.M. his rights per Miranda. Deputy Busby then asked A.M. where he had obtained the methamphetamine ice from and he responded, from "David." Deputy Busby then asked A.M. to clarify who "David" was and he replied "Malcolm David Thomas." Deputy Busby replied "Little Malcolm David" and A.M. stated "yes." A.M. told Deputy Busby that he had the rental truck because he was moving to north Alabama with his girlfriend. He said he was returning the rental truck because it was overheating. He said he was

5

with Thomas and they went to a house in Creola. He described the man as heavy set, but said it was the first time he had seen the man and he did not not know the man's name. He said that Thomas had a black, "over the shoulder" gym type bag that he took into the heavy set man's house. A.M. stated that inside of the gym bag was a big bag which contained about nine ounces of methamphetamine ice and a large amount of pseudoephedrine pills. He stated that Thomas was going back to the hotel in Satsuma and picked up Adrianne Miller, and that they were going back to the man's house to pick up the methamphetamine ice and the pills. A.M. described to the deputies the room in the house where Thomas left the black bag. A.M. told the deputies that Thomas and Miller may have some more methamphetamine ice on them, and that he knew that David took some methamphetamine ice out of the bag before they left the man's house.

Deputy Sullivan had returned to the hotel and discovered that the hotel management staff were evicting Adrianne Miller due to a flooding of the room, 201, which leaked into the room below. The maintenance staff had cleaned up the flooded room and removed the trash, which was still in the maintence staff cart. Deputy Sullivan retrieved the trash from the cart and discovered a large amount of empty boxes of pseudoephedrine pills and the blister packs along with paperwork with the names of Malcolm David Thomas and Adrianne Leigh Davis. By counting the total number of blister packs, the deputies established that there were 96 tablets of this type of pseudoephdrine, commonly referred to as "red hots," removed from the packaging recovered from the trash.

With information received from A.M., a state search warrant was obtained for the residence on Old Highway 43, Creola, Alabama. Just prior to the execution of the State search warrant, J.W. was observed leaving the house and investigators followed. J.W. was stopped for a traffic violation and while the traffic stop was occurring, the state search warrant was executed at

the residence on Old Highway 43.  During the search of the residence, the investigators discovered approximately 43 grams of methamphetamine ice and J.W. was subsequently arrested at the scene of the traffic stop.  J.W. was transported back to his residence and read his Miranda rights. J.W. agreed to speak to the deputies and stated that Malcolm David Thomas and A.M. had come to his house and told him that their hotel room had flooded and they wanted to leave a bag with him.  Thomas and McClure further stated they would be by to pick it up later.  The 43 grams of suspected methamphetamine ice was discovered in a gym bag and reported to be the bag that Malcolm David Thomas left at J.W.'s residence.  The search also revealed the following items, a sandwich bag full of pseudoephedrine, digital scales, and two shotguns.  J.W. was taken into state custody for trafficking methamphetamine ice.  The drugs field tested positive for methamphetamine.

After a period of time, surveillance units observed that Thomas traveled back to the hotel in the red Honda and picked up Miller.  Miller entered the red Honda and Thomas entered a gray 2004 Pontiac Grand Am.  Both subjects departed the parking lot of the hotel in the two vehicles.

Deputy Sullivan and Sgt. Thornton assisted a marked unit in conducting a traffic stop on Adrianne Davis Miller.  She was driving the red Honda, which had an improper tail light.  Miller was read her Miranda rights and agreed to cooperate with the deputies.  Miller was asked about her involvement with selling and distributing methamphetamine ice.  Miller stated she was going to receive a shipment of meth ice later that day from her source which she identified as Jeffrey Marks.  Miller agreed to contact Marks to determine when he would be traveling to the Mobile area.  Marks stated he would be leaving around 7:00 p.m., after he finished handling some other business.  Miller told the deputies that she customarily obtained the hotel room for Marks and his wife when they arrived in Mobile with the drugs.  A plan was formulated by the deputies to get

the room in Miller's name using funds from the Mobile County Sheriff's Office Narcotics fund. They obtained room 428 at a hotel on the West I-65 Service Road in Mobile for this purpose.

On March 14, 2014, deputies approached Malcolm David Thomas in the gray 2004 Pontiac Grand Am at the Murphy Gas Station at the WalMart Store in Saraland, Alabama. Thomas was detained due to the fact that the search warrant was being executed at the residence on Old Highway 43. Thomas not charged at that time pending further investigation.

On March 15, 2014, at approximately 8:00 a.m., Marks arrived at the hotel on West I-65 Service Road, Mobile, Alabama, with his wife, Jeri M. Marks. Marks was driving a 2004 gray Dodge Durango. They went to room 428. At approximately 9:15 a.m., MCSO deputies entered the room they had rented for Marks after receiving confirmation that he was ready to meet with Miller to supply her with methamphetamine ice. The deputies observed the incriminating evidence in plain view-- syringes on the night stand, a sandwich bag with methamphetamine ice (approximate weight 24.4 grams) on top of the entertainment center, and a hand towel on the bed with blood on it. Also in the room was a small portable safe that was open sitting in a chair. The safe contained a zip-lock sandwich bag of marijuana (approximate weight 20 grams), North American Arms .22 caliber revolver, a sandwich bag of methamphetamine ice (approximate weight 113.1 grams), digital scales with a case, five ziplock bags of money totaling approximately $5,000 in U. S. currency, five needles, a spoon, watch battery, cigars, fingernail clippers, and numerous ziplock bags. Both bags of methamphetamine ice field tested positive for methamphetamine. Jeffrey and Jeri Marks were taken into custody.

Both subjects were read their Miranda rights and Jeffrey Marks agreed to talk with the deputies. Marks admitted that he received methamphetamine ice from a source of supply in the Montgomery area, to whom he presently owed $6,000 in drug debts. Marks further stated that he

8

only sold large quantities to Adrianne Miller. He also advised he had conducted seven meth ice deals in the Montgomery area prior to traveling to Mobile, Alabama. Marks stated he had firearms in the vehicle, along with a taser and firearms in the motel room.

Jeri Marks was advised of her Miranda rights by Deputy Greg O'Shea and she agreed to speak to him. Jeri told Deputy O'Shea that it took time to open the door because she had "shot up." Jeri did not say what she had shot up. Deputy O'Shea asked another officer to question her husband about the nature of the drug Jeri had ingested, and when Jeri heard that, she admitted that she shot up meth. Jeri then was unwilling or unable to answer other questions. The deputies observed needle marks in Jeri's arm and also made photographs of them.

The agents and deputies also seized the cell phones, a laptop and items from Marks' vehicle, which included three computer hard drives. Deputy Sullivan obtained state search warrants for these items and the deputies and agents began an analysis. In one of Marks' phones, Deputy Sullivan observed the following text message exchange with Jeri Marks, which occurred in early March:

Jeri: " What is your status with April. She wants 2 but don't know if she owes anything. What do I do for her?"

His reply was "I dk right now."

Her response, "OK, so what should I do."

Her next text: "Do you want me to give her anything or NOT?"

There was no text response from him at that time. Jeri sent him another text within a couple of days, asking him if he was in Mobile. He replied, "No."

From the investigation, through the post-Miranda statement provided by Miller, and from a Verizon payment receipt reflecting a payment on Marks' account made in Mobile, the officers

9

learned that Marks did come to Mobile about once a week. According to Miller, he brought with him 8 or 9 ounces of meth every week for six months. The texts excerpted above also establishes that she knew that Marks routinely came to Mobile.

In addition, in the hotel room when the deputies entered, there was an ounce of meth ice on the counter in plain view, by the oatmeal and the waffle. The larger quantity of meth ice was in the safe, but the safe was open and sitting in a chair. The meth ice in the safe and the gun were visible and in plain view. From the text messages excerpted above, it is clear that Jeri knew that Jeffery was in the drug business and specifically that he was dealing in Mobile.

The parties agree that the defendant is accountable for approximately 5.3 kilograms of methamphetamine ice. The parties also agree that the defendant appears to have occupied a minor role in the conspiracy.

AGREED TO AND SIGNED.

Respectfully submitted,

KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: 8/8/14

Vicki M. Davis, Criminal Chief
Assistant United States Attorney

Date: 8/7/14

Gloria A. Bedwell
Assistant United States Attorney

Date: 8/14/14

Jeri Michelle Marks
Defendant

Date: 8-14-14

Raymond L. Bell, Jr., Esq.
Attorney for Defendant

10